UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**DENICE LEE, A/N/F JS, A TODDLER,**

    **Plaintiff,**

v.                                                    No. SA-18-CV-00605-JKP

**UNITED STATES OF AMERICA,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on June 4, 2020, for hearing upon *Defendant's Motion for Summary Judgment* (ECF No. 38). Upon due consideration of Defendant's motion, the pleadings and evidence on record, and the arguments of the parties, the Court denies the motion.

## BACKGROUND

Plaintiff Denice Lee ("Lee") initiated this action against the United States pursuant to the Federal Tort Claims Act ("FTCA") on June 18, 2018. ECF Nos. 1, 6. Lee asserts a cause of action for medical malpractice negligence.

JS, a minor, was born on December 2, 2015, to Denice Lee and Kendall L. Smith ("Smith"). ECF No. 6 ¶ 10. Lee is deaf, and Smith has bilateral retinoblastoma, a heritable form of eye cancer which causes tumors to form within the eye. *Id.* Smith's retinoblastoma meant that JS had a 50% chance of inheriting the disease and developing tumors. *Id.*

JS underwent child checks at Communicare on December 11, 2015, December 16, 2015, February 10, 2016, and April 15, 2016. *Id.* ¶ 12. At the April 15, 2016 appointment, Lee complained JS's eyes were turning outward. *Id.* JS was then referred for ophthalmologic consultation and diagnosed with bilateral retinoblastoma on or about April 28, 2016. *Id.* ¶¶ 12-

13. Treatment for retinoblastoma includes intraarterial chemotherapy, cryotherapy, and laser treatments. *Id*. ¶ 13. These treatments may extend for a patient's lifetime and despite treatment, blindness may result. *Id*. ¶ 14.

Lee alleges negligence led to a delay in diagnosing JS's retinoblastoma and subsequently led to damage to JS's eyes, pain and suffering, and the requirement of significant medical treatment, both in the past and in the future. *Id*. ¶ 17.

## LEGAL STANDARD

The Court will grant summary judgment if the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate competent summary judgment evidence "showing that there is a genuine [dispute] for trial." *Adams*, 465 F.3d at 164; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). The parties may satisfy their respective burdens by "tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

When ruling on a motion for summary judgment, the Court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55. However, when the nonmoving party fails "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley*, Civil Action No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

## DISCUSSION

Defendant's motion for summary judgment presents two arguments: (1) Lee cannot prove a breach by the treating physicians in this case because she cannot establish that Dr. Switzer was aware of the history of retinoblastoma and (2) Lee cannot present evidence on exactly what harm, if any, was proximately caused by the alleged malpractice. ECF No. 38 at 3.

**1. Family history of retinoblastoma**

To satisfy its initial burden of informing the court of the basis for the motion, Defendant states there are two standards of care with respect to retinoblastoma. ECF No. 38 at 4. When there is no family history or reason to suspect any heightened risks, the standard of care is to perform a red reflex test to look for abnormalities in the eye. *Id*. When a family history of retinoblastoma is known, the child should be regularly examined by an ophthalmologist starting at birth. *Id*. Defendant contends before the treating physicians knew of this family's history of retinoblastoma, they consistently performed red reflex tests. *Id*. Defendant further contends that

immediately upon learning of the family history, the treating physicians referred JS to an ophthalmologist. *Id.* at 5.

To demonstrate the absence of a genuine dispute of material fact, Defendant states the parties' experts agree that the physicians were not aware of any family history of retinoblastoma before the April 2016 visit and the evidence confirms JS's mother attended the first visits alone and gave her own family history, but not that of JS's father. *Id.*

To satisfy her burden to show a genuine dispute for trial, Lee designates her expert witness's opinion. Dr. David A. Plager's expert opinion states: "The family has indicated that they told their primary care providers on multiple occasions about the father's bilateral retinoblastoma before, around the time of, and after the birth of the child, but that they were reassured that the eyes were fine and no reason for further investigation." ECF No. 40-3. Dr. Switzer, the treating physician for JS's first two visits, testified in his deposition that "no family history of retinoblastoma was given" and Lee attended JS's appointments alone. ECF No. 39-9 at 114. Lee testified in her deposition she and Smith attended JS's first visit to Dr. Switzer. ECF 40-4 at 25, 29. Lee testified that at JS's first visit Smith interpreted for her, she told Dr. Switzer that JS's father (Smith) had an eye condition and JS needed to be checked, and Dr. Switzer said "fine." *Id.* at 25-27.

The evidence consisting of expert witness Plager's expert report, Dr. Switzer's deposition testimony, and Lee's deposition testimony reveal genuine disputes of material fact on the issue of whether Dr. Switzer was aware of the history of retinoblastoma. In light of this conflicting deposition testimony, determination of whether and when the treating physicians were told about the family history of retinoblastoma will require making credibility determinations and weighing evidence. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254–55. The fact finder must

determine these factual disputes. For this reason, Defendant is not entitled to summary judgment as a matter of law on this basis.

## 2. Harm proximately caused by the alleged malpractice

Next, Defendant contends it is entitled to summary judgment as a matter of law because Lee cannot present evidence on exactly what harm, if any, was proximately caused by the alleged medical malpractice.

To satisfy her summary judgment burden, Lee presents the expert witness report of Dr. David A. Plager. In his report, Dr. Plager opines the diagnosis of retinoblastoma could have been made earlier and the tumors would have been smaller with an earlier diagnosis and the visual outcome would likely have been better. Specifically, Dr. Plager states the family indicated they told their primary care providers on multiple occasions about Smith's bilateral retinoblastoma and opines any child of Smith needs to be referred for ophthalmologic examination as soon as practicable after birth. Further, Dr. Plager states, it is unlikely JS had normal red reflex tests at each of the well visits and the macular tumor(s) in this baby would have been quite evident with a properly performed red reflex test.

Given Lee's statement she told the doctors of the family history and after review of the medical records, Dr. Plager states, "the standard of care to refer the offspring of a patient with bilateral retinoblastoma to an ophthalmologist skilled in detecting retinoblastoma as soon as practicable after birth and the failure to perform an accurate red reflex test of an infant at birth and at well baby checks were not met in this case. The breaches in the standard of care caused subsequent delay in diagnosis allowing for further tumor growth and subsequent damage to the retina and the child's ultimate visual outcome." ECF No. 40-3 at 1-2.

Accepting this evidence as true and drawing all justifiable inferences in her favor, the Court concludes Lee presented evidence which creates a triable issue on what harm was proximately caused by the alleged malpractice. Consequently, Defendant is not entitled to summary judgment on this basis.

## CONCLUSION

For the reasons stated above, Defendant United States of America's Motion for Summary Judgment (ECF No. 38) is DENIED.

This matter is set for status conference on **June 18, 2020 at 11:00 AM** via video conference. The video conference link and instructions may be requested from Magda Muzza, Courtroom Deputy. She can be reached at (210) 244-5021 or Magda_Muzza@txwd.uscourts.gov. Participants should test the video conference link 24 hours prior to the conference.

It is so ORDERED.

SIGNED this 5th day of June 2020.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE